## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

IN THE MATTER OF THE )
APPLICATION OF THE NEW YORK )
TIMES COMPANY FOR ACCESS TO )     **Misc. No. 08-00576 (RCL)**
CERTAIN SEALED COURT )
RECORDS )
_____)

## MEMORANDUM OPINION

## I.  INTRODUCTION

Now before the Court is the New York Times Company and Los Angeles Times Communications LLC's (collectively "the Times") motion [1] for public access to sealed court records.  The Times seek access to search warrants, warrant applications, supporting affidavits, court orders, and returns for all warrants requested by the government relating to searches of property owned by Dr. Steven J. Hatfill and/or Ms. Peck Chegne during the "Amerithrax investigation."  The Times have withdrawn their motion to unseal the warrant materials relating to Dr. Bruce Ivins because the Court unsealed those materials in a September 24, 2008 order. (*See* [4].)  Upon consideration of the motion [1], the government's opposition [10], the Times' reply [13], and the entire record herein, it is hereby ORDERED that the motion will be GRANTED.  The warrant materials will be unsealed with limited portions that would "tend to reveal the identity of a [confidential] informer" redacted.[1]

_____

[1]The Times concede that, as was the case with the Ivins warrant materials, it is proper to redact personal identifiers that would tend to reveal the identity of confidential informants. *Roviaro v. United States*, 353 U.S. 53, 60 (1957).

1

## II.  <u>FACTUAL BACKGROUND</u>

The court records sought by the Times relate to the investigation of the mailing of anthrax to members of Congress and the media in September and October 2001.  At least 22 victims contracted anthrax as a result of the mailing (Gov't Opp'n 2) and five individuals died as a result (*Id*. at 2–3).  Following the anthrax attacks, the government began a "seven-year endeavor that relied upon hundreds of thousands of agent-hours and spanned six continents" in an effort to bring the attacker(s) to justice. (Gov't Opp'n 3.)  One of the investigative techniques employed was search warrants of property, including the property of Dr. Hatfill. (*Id*. at 3.)

Dr. Hatfill, a researcher at the United States Army Military Research Institute of Infectious Diseases ("USAMRIID"), had been named a "person of interest" by the government in 2002 (Times' Mot. 2) and had also become the subject of significant media attention (Gov't Opp'n 4).  For example, the August 1, 2002 search warrant of Dr. Hatfill's residence was covered as a live media event with helicopter footage of the search in progress. (*Id*.)  In part because some information about the investigation of Dr. Hatfill trickled out from the government to the media (Gov't Opp'n 4 at n.4), Dr. Hatfill filed suit against the United States Department of Justice ("DOJ"), the FBI, and other individuals, claiming a violation of the Privacy Act.   Ultimately, the Department of Justice definitively ruled out Dr. Hatfill as the anthrax mailer (*Id*. at 5) and settled Dr. Hatfill's lawsuit, for substantial monetary damages, with no admission of liability (*Id*. 4 at n.4).

Following the suicide of another researcher at USAMRIID, Dr. Bruce E. Ivins, on July 29, 2008, the government held a press conference in which it stated that Dr. Ivins was the "sole suspect in the case." (Times' Mot. at 3.)  As the government has noted, "there was enormous

media and public interest in the details of the anthrax investigation in general" after Ivins' death. (Gov't Opp'n at 6.)  Despite the government's press conference and statement that Ivins was the sole suspect in the attacks, the public continues to be fascinated by the details and length of the investigation.  As a result, the Times ask the Court to unseal additional documents related to the investigation; specifically, the warrant materials related to Dr. Hatfill that were never disclosed. The government, however, objects to the release of information related to Dr. Hatfill, purportedly on the basis of his privacy interests. (Gov't Opp'n 7.)

III.   **ANALYSIS**

The Times argue that both the common law and the First Amendment afford the press and public a qualified right of access to inspect warrant materials following the close of an investigation.[2]  This is a case of first impression in this Circuit, and this Court agrees.[3]

---

[2]The government concedes that there is a common law right of access to search warrant materials. (Gov't Opp'n 9.)  Whether there is also a First Amendment qualified right is an important question because different legal standards apply.  The common law right of access test is a multi-factor balancing test, see *infra*.  If the First Amendment qualified right of access applies, however, the government has the burden of demonstrating that a compelling interest is advanced by denying access to the documents and that the denial of access is narrowly tailored to serve that interest.  *Washington Post v. Robinson*, 935 F.2d 282, 288 n.7 (D.C. Cir. 1991).

[3]The Court recognizes that reaching the constitutional question when the case can be resolved on common law grounds is unusual.  However, this is how the D.C. Circuit has indicated a court should proceed when a party claims that there is both a common law right of access and a constitutional right of access under the First Amendment. In *Washington Post*, the D.C. Circuit was presented with the question of whether or not the public should have access to plea agreements.  935 F.2d at 288.  The Washington Post argued that there was both a common law right of access and a qualified First Amendment right of access.   The D.C. Circuit stated that despite the presence of overlapping common law and constitutional issues, it would reach the constitutional issue, and not resolve the case on common law grounds, "because of the different and heightened protections of access that the first amendment provides over common law rights." *Id*. at 288, n.7.

A.      **First Amendment Right of Access to Warrant Materials**

The right of access to criminal trials and proceedings is a right grounded in the First

Amendment. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982). The

difficulty, of course, is in determining whether or not the qualified right of access applies to a

particular type of proceeding or document.[4] The Supreme Court has held that in determining

whether the public has a qualified right of access to criminal proceedings, courts must analyze

two factors: (1) whether the place and process have historically been open to the press and

general public, and (2) whether "public access plays a significant positive role in the functioning

of the particular process in question." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9

(1986) ("*Press-Enterprise II*").[5]  The D.C. Circuit has held that this test applies to both court

proceedings and court documents. *See Washington Post v. Robinson*, 935 F.2d 282, 287–288

(D.C. Cir. 1991) (using the two-part test to analyze and conclude that there is a qualified First

Amendment right of access to plea agreements). Indeed, the parties in this case are in accord that

the two-pronged test applies in this case. (Times' Mot. 9; Gov't Opp'n 10.)

This Circuit has not entertained the question presented in this case—whether or not there

is a First Amendment qualified right of access to warrant materials after an investigation has

---

[4]The Supreme Court and circuit courts have thus far taken a piecemeal approach to
recognizing First Amendment qualified rights of access. The courts have thus far recognized a
First Amendment qualified right of access in, for example, *Richmond Newspapers Inc. v.
Virginia*, 448 U.S. 555 (1980) (criminal trials generally); *Press-Enterprise I*, 464 U.S. at 510
(*voir dire* proceedings); *Press-Enterprise II*, 478 U.S. 1 (1986) (preliminary hearing transcript);
*Waller v. Georgia*, 467 U.S. 39, 46 (1984) (suppression hearings (under the First and Sixth
Amendments)); *Washington Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (plea
agreements); *In re the Matter of the New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987)
(documents filed in conjunction with suppression hearings).

[5]This test is often referred to as the "experience" and "logic" test.

concluded.  The Eighth Circuit has held that there is a First Amendment qualified right of access

to warrant materials while an investigation is still ongoing[6]; *a fortiori,* that Circuit would

conclude that there is a qualified right of access to warrant materials after an investigation has

concluded.  The Fourth and Ninth Circuits have held that there is no First Amendment qualified

right of access to warrant materials while an investigation is still ongoing; however, those courts

have not decided the question presented in this case.[7]  *Times Mirror Company v. United States*,

873 F.2d 1210, 1221 (9th Cir. 1989) (expressly reserving the question of whether there is a First

Amendment right of access after the investigation has concluded or indictments have been

returned); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 62 (4th Cir. 1989) (stating that the question

presented was whether the First Amendment confers a qualified right of access to warrant

materials *in the interval between execution of the warrants and the indictment*) (emphasis

---

[6]In *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988), a newspaper filed a motion to unseal search warrants, attached affidavits, and other materials related to the search of a McDonnell Douglas employee who was under investigation for alleged fraud and bribery in the defense industry.  *Id*. at 570–71.  A splintered Eighth Circuit panel concluded that a First Amendment qualified right of public access extends to search warrant materials. (*See* opinion of McMillian, J., for the court, 570–576; Heaney, J., concurring in part and dissenting in part, 576–77).  The third member of the panel concluded that the First Amendment issue need not be reached because there is a common law right to access judicial records and the determination of when that right applies is left to the sound discretion of the trial court.  *Id*. at 576 (Bowman, J., concurring).  The Eighth Circuit ultimately concluded that although a First Amendment qualified right of access attaches to warrant materials, they should not have been unsealed in that case because the right is not absolute and the government had overcome the right by demonstrating a compelling interest in keeping the records sealed—the fact that unsealing the records would compromise their investigation.  *Id.* 574.

[7]The government states that it has not "formally close[d] the case."  (Gov't Opp'n at 7.) However, it has stated that it believes that Dr. Ivins, acting alone, committed the anthrax mailings.  (Times' Mot. Ex. C. (letter to Dr. Hatfill on August 8, 2008)).  Dr. Ivins died on July 29, 2008.  (Gov't Opp'n 6.)  Apparently, no other suspects are being investigated.  As a result, the government does not argue that release of the materials would interfere with an ongoing investigation.

added).

Applying the "experience" and "logic" test in the first instance to the question of post-investigation warrant materials, this Court concludes that there is a qualified First Amendment right of access.

### 1.    Warrant Materials Have Traditionally Been Accessible

The post-investigation warrant materials sought in this case have historically been available to the public, and therefore meet the first prong of the Supreme Court's First Amendment qualified right of access test.  First, routine historical practice countenances in favor of a qualified First Amendment right of access to warrant materials; warrant applications and receipts are routinely filed with the clerk of court without seal.[8]  Fed. R. Crim. P. 41(i) (warrant materials should be delivered to the clerk in the district where the property was seized); *Gunn*, 855 F.2d at 573.  *See also Times Mirror Co.*, 873 F.2d at 1214 ("[M]ost search warrant materials routinely become public . . . ."); *Baltimore Sun Co.*, 886 F.2d at 64 ("Frequently—probably most frequently—the warrant papers including supporting affidavits are open for inspection by the press and public in the clerk's office after the warrant has been executed.") [9]; 3A Charles Alan

---

[8]The Court has been advised by the clerk's office in the United States District Court for the District of Columbia that the routine practice is to make warrant materials publicly available after a search has been executed and a return is available.  Of course, in a particular case a party may file a motion to seal the warrant materials even after a search is executed.

[9]Of course, the courts in *Times Mirror* and *Baltimore Sun* ultimately concluded that there was no First Amendment qualified right of access to warrant materials *during* an ongoing investigation.  The court in *Baltimore Sun* held that the first prong of the First Amendment test did not weigh in favor of releasing warrant materials during an ongoing investigation because warrant proceedings are necessarily *ex parte* since the subject of a search cannot be tipped off as to the application of a warrant. 886 F.2d at 64.  Of course, this rationale is inapplicable in this case because the investigation has already concluded.  The Court in *Times Mirror* ruled on the history prong with a caveat, stating that history does not imply accessibility to warrant materials

Wright, *Federal Practice and Procedure*, § 672 (2008) (stating that warrant materials are filed with the clerk of court and that sealing the materials is an "extraordinary action").

Second, there is an historic common law right of access to judicial records and documents that has been recognized in United States courts for well over a century. *See Nixon v. Warner Communications*, 435 U.S. 589, 597, n.7, n.8 (1978) (citing case law and stating that the common law right of access to judicial records and documents has been recognized in courts in the District of Columbia since at least 1894.  Indeed, the government acknowledges that there is a common law right of access to warrant materials (*See* Gov't Opp'n 9 ("urg[ing] the Court to adopt .. . a common law right of access, but no constitutional right of access, to sealed search warrant materials")).  The fact that there is a common law tradition of right of access is an appropriate consideration to take into account when examining the scope of the First Amendment.  *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004) (stating that courts generally invoke the common law right of access to judicial documents in support of a finding of a history of openness under the "experience" prong of the First Amendment test).  Therefore, the fact that there is a common law tradition of access to warrant materials—which is acknowledged by the government in this case—weighs strongly in favor of a First Amendment qualified right of access to warrant materials.

> **2.      Access to Post-investigation Warrant Materials Plays a Significant Positive Role in the Functioning of the Process in Question**

The second factor in the Supreme Court's First Amendment right of access test—whether public access plays a significant positive role in the functioning of the process—also weighs

---

"at least while a pre-indictment investigation is still ongoing . . ."  873 F.2d at 1214.

strongly in favor of a qualified First Amendment right.  The Court starts with the general

proposition that "the First Amendment guarantees the press and the public a general right of

access to court proceedings and court documents unless there are compelling reasons

demonstrating why it cannot be observed." *Washington Post Company v. Robinson*, 935 F.2d

282, 287 (D.C. Cir. 1991).  The rationale for this proposition is that openness of judicial

processes and documents "gives assurance that established procedures are being followed and

that deviations will become known" and corrected.  *Press-Enterprise I*, 464 U.S. at 508.  In

addition to ensuring actual fairness, the openness of judicial proceedings helps ensure the

appearance of fairness.  *Id*.  The fact that proceedings are open demonstrates to the public that

judicial processes are fair and that there is nothing to hide.   As noted by the Supreme Court,

"[p]eople in an open society do not demand infallibility from their institutions, but it is difficult

for them to accept what they are prohibited from observing."  *Richmond Newspapers, Inc. v.*

*Virginia*, 448 U.S. 555, 572 (1980).

Specifically, with respect to warrants, openness plays a significant positive role in the

functioning of the criminal justice system, at least at the post-investigation stage.  As noted by

the Times, warrant materials are often used to adjudicate important constitutional rights such as

the Fourth Amendment protection against unreasonable searches and seizures.  Public access to

warrant materials serves as a check on the judiciary because the public can ensure that judges are

not merely serving as a rubber stamp for the police.  *See United States v. Leon*, 468 U.S. 897, 917

n.18 (1984) (stating that closer supervision is a way to control magistrates merely serving as a

"rubber stamp for police" when approving search warrants); *In re Search Warrant for Secretarial*

*Area Outside Office of Gunn,* 855 F.2d 569 , 573 (8th Cir. 1989) (stating that warrant materials

are "important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct").

      **3.**      **A Qualified First Amendment Right of Access Exists and the Government has No Compelling Interest in Keeping the Materials Secret**

Since both prongs of the Supreme Court's "experience" and "logic" test weigh in favor of a qualified First Amendment right of access to warrant materials after an investigation has been completed, the Court concludes that the First Amendment standard applies in this case.[10]  Of course, the First Amendment right of access is "qualified" and is not absolute.  In other words, although the government has the burden of showing that it has a compelling interest in keeping the materials secret, if it can do so the warrant materials will remain under seal.  *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982).  The government does not present a compelling interest in keeping the materials secret in this case.

The government asserts that Dr. Hatfill's "right to get on with his life" outweighs the public's right to access the warrant materials. (Gov't Opp'n 14.)  While the government is correct that Dr. Hatfill's privacy rights must be considered, its assertion that a generalized privacy right to "get on with [one's] life" outweighs the public's right to access in this case is unpersuasive.

---

[10]This Court's holding is a narrow one.  This is a case of first impression, and as such, the Court only decides the narrow issue in front of it; whether there is a qualified First Amendment right of access to warrant materials after an investigation has concluded.  This Court does not at this time recognize a First Amendment right as robust as the one the Eighth Circuit recognized in *Gunn*, which included a First Amendment right of access to warrant materials even during ongoing investigations.  This Court's holding is also not contrary to the Fourth and Ninth Circuit decisions in *Times Mirror* and *Baltimore Sun*, cases which limited their holdings to the situation in which access was sought during ongoing investigations.

First, the fact that Dr. Hatfill was under investigation and that he has been cleared in the anthrax attacks is already known by the public; disclosure of the warrant materials in this case does not present the risk that the identity of an innocent third person will be newly disclosed to the media. Moreover, Dr. Hatfill himself filed a lawsuit against the Department of Justice and placed some details regarding the searches in the public eye.[11]

The government also asserts that the identity of informants that provided information to the government during the investigation may be disclosed to the public if the warrant materials are made public. The government is correct that protecting the identity of informants is a compelling interest, as was discussed by the Supreme Court in *Roviaro v. United States*:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

353 U.S. 53, 59 (1957).

However, the goal of protecting the confidentiality of informants can be accomplished by means less restrictive than prohibiting access to the warrant materials altogether. Under the First

---

[11] Hatfill filed a Complaint in *Hatfill v. Mukasey*, No. 1:03-cv-01793 (RBW) (D.D.C.) that stated: the government conducted a consensual search of Dr. Hatfill's apartment on June 25, 2002; that the government searched Dr. Hatfill's storage shed in Florida pursuant to a search warrant; that the government searched Dr. Hatfill's apartment on August 1, 2002; that the searches of Dr. Hatfill's apartment were either witnessed by the media or broadcast live on national television, and that the home of Ms. Chegne was also searched on August 1, 2002. (Times Mot. Ex. D, Bead Decl. ¶ 8; Times Mot. Ex. 5 (excerpts from the amended complaint in *Hatfill v. Mukasey*)). Hatfill's lawsuit and the subsequent settlement has already been documented by the media. *See, e.g.,* David Willman, *Anthrax Subject Receives Payout,* Los Angeles Times, June 28, 2008 at A1.

Amendment qualified right of access test, the government must demonstrate that total restriction of the right of access is narrowly tailored to accomplish its compelling interests. In this case, the Court agrees that the government has demonstrated a compelling interest—promoting effective law enforcement—in keeping the identity of informants secret.  However, that interest can be accomplished by simply redacting the identity and personal identifiers of the informants, which the Court will direct the government to do in this case.

Finally, this case presents the question of whether or not the warrant materials regarding the searches of Peck Chegne's apartment and car should be released.  Ms. Chegne was the girlfriend of Dr. Hatfill at the time of the searches.  On the one hand, Ms. Chegne is an innocent party and has not put any of the details regarding the searches in the public eye.  On the other hand, however, the media is already aware of her identity and the fact that her apartment was searched—Dr. Hatfill disclosed these details in his complaint against the government.  Moreover, as previously stated, the Court starts with the presumption that judicial records should be open. *Washington Post Company*, 935 F.2d at 297.  The government has not asserted the privacy rights of Ms. Chegne as a basis for withholding the materials, and therefore the Court will not rely on an interest that has not even been raised.  Finally, the Court has conducted its own independent review of the warrant materials relating to Ms. Chegne and has found that there are no highly intimate or personal details of the kind that would present a compelling interest in not releasing the materials.  *See infra*, note 14.  As a result, the government will also be instructed to release the warrant materials related to Ms. Chegne.

### B.    Common Law Right of Access to Warrant Materials

The Court believes that the First Amendment right of access standard applies and that the

11

Times prevail under that standard; therefore, whether or not there is a common law right of access to the warrant materials is ultimately not dispositive.  However, because (1) the existence of a common law right of access to warrant materials was relied upon as historical evidence in finding a First Amendment right of access; and (2) the Court believes that in the event that there is no First Amendment qualified right of access to warrant materials the Times would still prevail under the common law legal standard, the Court will briefly analyze this case under the common law right of access standard.

First, the Court notes that the existence of a common law right of access to warrant materials is not in dispute.  *See supra* at n.3.  In order to analyze whether or not a common law right of access should be granted to particular documents, the government has proposed using the test articulated in *United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1981).[12]  The *Hubbard* test states that in deciding whether or to make documents public a court should consider: (1) the need for public access to the documents at issue; (2) the public use of the documents; (3) the fact of objection and the identity of those objecting to disclosure; (4) the strength of the generalized property and privacy interests asserted; (5) the possibility of prejudice; and (6) the purposes for which the documents were introduced.[13]  When making a

---

[12]*Hubbard* is not entirely analogous to this case.  In *Hubbard*, the D.C. Circuit considered whether an owner of property seized during a search could intervene in an ancillary proceeding to assert its privacy interests and prevent disclosure of documents seized. 650 F.2d at 310–11. *Hubbard* was decided before many of the decisions extending the First Amendment qualified right of access, *see supra* n.4, and examined the right of access to documents seized during a search, not the right of access to warrant returns and affidavits.  *Id*. at 316.  Nevertheless, because the *Hubbard* test provides a useful framework for analyzing the common law right of access to judicial records and the parties in this case refer to it, the Court will use it in this case.

[13]The sixth factor does not apply to the present case because that factor was specific to the facts in *Hubbard* in which a private party sought to prevent disclosure of documents recovered

decision whether or not the public has the right to inspect judicial documents under the common law test, the trial court has substantial discretion to make a decision in light of the relevant facts and circumstances of the particular case.  *Id*. at 316–17.

### 1.      The Need for Public Access to the Documents at Issue

In this case, the public has a strong need for access to the documents at issue.  As conceded by the government, the anthrax investigation was one of the most complex, time-consuming, and expensive investigations in recent history.  As a result, the American citizens have a legitimate interest in observing and understanding how and why the investigation progressed in the way that it did.

### 2.      The Public use of the Documents

In *Hubbard*, the D.C. Circuit used this prong to analyze the extent to which the information sought was already in the public forum.  650 F.2d at 318.  The government concedes that much of the critical information is already in the public forum and that this factor weighs in favor of unsealing the warrant materials. (Gov't Opp'n 19.)

### 3.      The Fact of Objection and the Identity of Those Objecting to Disclosure

In this case, the government, without providing evidence, states that Dr. Hatfill objects to public disclosure of the search warrant materials.   This fact weighs in favor of not disclosing this materials.

### 4.      Strength of Property and Privacy Interests Asserted

Certainly Dr. Hatfill's privacy interests are implicated to a certain extent by the warrant

---

during a search.

materials.  However, the government does not provide any specifics as to why Dr. Hatfill objects

to disclosure of the materials, other than to state that he wants "to get on with his life."  The

government also does not cite any decisions that have recognized the right to "get on with one's

life" as a legally cognizable privacy interest.[14]  Moreover, the fact that Dr. Hatfill objects to the

disclosure of the warrant materials is mitigated because Dr. Hatfill introduced or re-introduced

some of the details regarding the search warrants into the public forum himself by suing the

United States in federal court.

### 5.        The Possibility of Prejudice

The government concedes that there is no possibility of prejudice in releasing the

documents.  (*See* Gov't Opp'n 16 n.12 (stating that the fifth factor is "not implicated" in this

case)).  In other words, the investigation is complete and therefore is not in danger of being

thwarted if the Court releases the documents.  This factor too favors disclosure.

In short, even if the Court were to analyze this case under the common law standard,

using its substantial discretion, the common law factors favor disclosure.  The public has made a

strong showing of need for the materials, much of the information is already in the public forum,

and there is no possibility of prejudice to an investigation or a future defendant.  These

---

[14]As noted by the Times, courts that have identified legally cognizable privacy interests
have done so with more specificity than a blanket statement that one has a right to get on with his
life.  *See, e.g.*, *Hubbard*, 650 F.2d 293 (stating that intimate details of individual lives, sexual or
otherwise is an assertable privacy interest); *In re Application of Newsday, Inc.*, 895 F.2d 74, 79
(2d Cir. 1990) (stating that the common law right of access may be qualified by the privacy rights
of persons whose "intimate relations may thereby be disclosed").  The government's assertion of
a general privacy right on behalf of Dr. Hatfill is not a sufficient privacy interest to overcome the
right of access.  *Cf. In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 374 (9th Cir. 2002) (stating
in a common law right of access case that "injury to official reputation is an insufficient reason
for repressing speech that would otherwise be free").

considerations, weighed against the government's generalized assertion that Dr. Hatfill has a privacy right to "get on with his life," mean that the Times would prevail even under a common law standard.

IV.     **<u>CONCLUSION</u>**

For the reasons set forth in this opinion, the Court finds that the public has a qualified First Amendment right to access warrant materials after an investigation has concluded. Although the government has a compelling interest in keeping the identity of informants secret, it has failed to show that it is necessary to seal all of the warrant materials to accomplish that objective. As a result, the Times' motion will be GRANTED. The United States will be required to release the warrant materials, redacting limited portions that would tend to reveal the identity of a confidential informer. The United States shall promptly provide the Court with the proposed redactions of their records.

A separate order shall issue this date.

SO ORDERED.


Signed by Chief Judge Royce C. Lamberth on November 17, 2008.